UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CRYSTAL D. LYNCH,

     Plaintiff,

v.                    CASE NO:  8:10-cv-1064-T-33TGW

CITY OF LARGO, FLORIDA,
a political subdivision,

     Defendant.
_____/


**ORDER**

This cause comes before the Court pursuant to Defendant City of Largo's Motion for Summary Judgment (Doc. # 17). Plaintiff Lynch filed a Response in Opposition thereto (Doc. # 28). For the reasons that follow, the motion is denied.

**I.  Background**

Lynch was hired by the City of Largo in March 2007 as an office specialist in its Fire Rescue Department. In August 2008, Lynch was diagnosed with epilepsy after experiencing a seizure at work. As a result of the seizure, Lynch experienced headaches, migraines, dizziness, lightheadedness, sleepiness and nausea. Lynch applied for intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.,* with the City. In August 2008, the City approved Lynch's FMLA leave request. Lynch took FMLA leave on an

intermittent basis.

In January 2009, Fire Chief Michael Wallace promoted Lynch to Fire Inspector in the City's Fire Prevention Department and approved a pay raise for Lynch. As a fire inspector, Lynch was supervised by Assistant Chief Timothy Wedin and his supervisor, Fire Marshal Edward Mullins. Fire Marshal Mullins reported to the head of the fire department, Chief Michael Wallace.

As a fire inspector, Lynch was required to drive a city-owned vehicle each day to five businesses within the City's fire district and conduct unannounced fire-safety inspections. Although Lynch often failed to inspect the required five businesses per day, Fire Marshal Mullins and Assistant Chief Wedin chose not to discipline her. Instead, they encouraged Lynch to take her time and learn the inspection process at her own pace.

Lynch experienced another seizure at work in August 2009. In September 2009, Lynch submitted her FMLA recertification application to the City. Although Lynch did not turn in her paperwork to the City by the required deadline, the City approved her request in October 2009. Thereafter, Lynch took intermittent FMLA leave on several occasions due to side effects from her epilepsy medication. In February 2010, Fire

Marshal Mullins gave Lynch a positive performance evaluation and a 4% merit pay increase.

In March 2010, Lynch's condition significantly worsened. Lynch was prescribed new medications for her epilepsy that caused more frequent and severe episodes of nausea, headaches, sleepiness and dizziness. The side effects of the new medications caused Lynch to miss work on March 5, 10, 11, 22, 23, 24, 29 and 30. The time missed on March 22, 23, 24, 29 and 30 was taken as FMLA days.

On March 22, 2010, Assistant Chief Wedin observed Lynch sitting in her city-owned vehicle outside of a business she was scheduled to inspect. Lynch explained to Assistant Chief Wedin that she did not feel well and was uncomfortable driving that day because she was experiencing side effects from her epilepsy medication. According to Lynch, Assistant Chief Wedin suggested that she look for another job. Later that day, Lynch decided to leave work four hours early because she felt ill. Lynch informed Fire Marshal Mullins that she was leaving work and had not taken her allotted one-hour lunch break. Assistant Chief Wedin, who was not aware that Lynch had not taken her lunch break and was not aware that she intended to take FMLA leave, entered into the City's electronic leave request system that Lynch had take four hours

of sick leave. When Lynch was absent from work the following day, Assistant Chief Wedin, who was supervising Fire Marshal Mullins' subordinates because he was out of the office, entered eight hours of leave for Lynch into the leave request system. Lynch returned to work on the afternoon of March 24.

When Lynch returned to work on March 24, she discovered that her time off had been incorrectly entered by Assistant Chief Wedin. Assistant Chief Wedin had incorrectly entered Lynch's leave time for March 22 and 23 as "sick time" instead of "FMLA-sick." Lynch was unable to correct Assistant Chief Wedin's error and, on March 24, sent an e-mail to Assistant Chief Wedin asking for help to correct the errors. When Assistant Chief Wedin received Lynch's e-mail, he asked Fire Marshal Mullins for advice on how to proceed. Fire Marshal Mullins instructed Assistant Chief Wedin to direct Lynch to enter her leave herself as FMLA-sick leave. Although Assistant Chief Wedin had previously helped Lynch and other employees correct errors to their time sheets, he now, for the first time, refused to help Lynch. Instead, Assistant Chief Wedin responded by e-mail on March 25, instructing Lynch to make the corrections herself. Lynch alleges that in the past her supervisors had removed their incorrect entries making it easier for Lynch to correct the errors.

Lynch re-entered the date, time and type of leave and submitted her time-off-work request to Fire Marshal Mullins for his review and approval. Lynch, however, altered the number of hours of leave taken on each of these days. Specifically, she changed the number of FMLA-sick hours taken on March 22, 2010, from four hours to three hours and the number of FMLA-sick hours taken on March 23, 2010, from eight hours to seven hours.

Typically, the supervisor reviews the time-off-work request and either approves the leave request or informs the employee of any errors and asks the employees to make the correction. In his deposition, Assistant Chief Wedin described the City's policy with regard to the handling of employee errors on time sheets as follows:

Q: What do you usually do when you find that someone has entered the incorrect time?

A: Well, I don't approve it.

Q: Then what do you do?

A: It goes back to the employee for corrections, and they're notified of – of –

Q: Why didn't, in this instance, it go back to her for correction? Why didn't it go back to Crystal Lynch for correction?

5

A:     You have to ask Chief Mullins that.

Q:     In the past how have you notified employees, when you say it goes back to them, of incorrect time entries?

A:     I would typically – I would see it, and I would do a face-to-face with them and explain what the issue was, whether it was –

Q:     Email?

A:     No.  I would say verbal.

Q:     And they would change it?

A:     Yeah.

Doc. # 21, Wedin Depo. p. 33 ln 15 – p. 34 ln 9.

Fire Marshal Mullins, in his deposition, was asked about why the City's policy was ignored and Lynch was not contacted about her errors, and he could not provide any explanation. Doc. # 19, Mullins Depo. p. 24.

In addition, the supervisor has the option of correcting the time entry error for the employee.  Fire Marshal Mullins knew that Lynch expected him to review her time entries for accuracy.  Fire Marshal Mullins, in fact, reviewed and approved Lynch's leave request for missing work on March 22 and 23.  After Fire Marshal Mullins approved Lynch's entries, Assistant Chief Wedin reviewed them for accuracy.  Assistant

Chief Wedin noticed that Lynch had changed not only the type of leave taken, but also the number of hours of leave taken, and he notified Fire Marshal Mullins. After reviewing the leave entries, Fire Marshal Mullins determined that Lynch had intentionally falsified her leave records because she had not been directed to change the hours entered, and she was able to change the type of leave entered without altering other information previously entered, such as the date or the number of hours of leave taken.

Lynch was called into Chief Wallace's office on March 25, 2010, and he questioned her about her leave. Chief Wallace asked Lynch why she was missing so much work and what was wrong with her. Chief Wallace told Lynch that everyone noticed a difference in Lynch and that she may be depressed. Lynch explained that she was experiencing side effects from her medication. Lynch alleges that Chief Wallace conducted the following conversation with her about the reason for her leave:

> The next day on March 25, I was called into Fire Chief Wallace's office. He asked "What is going on here?"; "You've been missing a lot of work." "What is wrong with you?" "Several people have said you changed." "You are only a shell of yourself." I explained my reason for FMLA use. The new medication I had been prescribed for my epilepsy was causing me serious problems such as nausea and dizziness. I had a test that came back positive

that is causing me problems.  "You're different."
Doc. # 17-2, Plaintiff's Response to Defendant's First Set of
Interrogatories p. 3.

Lynch then took FMLA leave on March 29 and 30.  During
her absence on March 30, 2010, Fire Marshal Mullins
recommended to Chief Wallace that Lynch's employment be
terminated because she had intentionally falsified her time
records in violation of Item 25 of the City's Code of Conduct
and Disciplinary Guidelines, which provides as follows:
"Falsifying or intentional omission of official or City
records including employment applications, accident records,
work records, purchase orders, time sheets, or any other
report, record, or application."  Doc. # 18, Lynch Depo. Ex.
23.  When Lynch returned to work on March 31, Chief Wallace
again called Lynch into his office and asked her about why she
was missing so much work and using "so much time."  Again,
Lynch explained that she had not been feeling well because of
the side-effects from her medication.  Chief Wallace then told
Lynch that she had falsified her time card.  Lynch responded
that it was an "honest mistake."  Chief Wallace issued a
notice of disciplinary action to Lynch.

Lynch requested a pre-disciplinary hearing, which was
held on April 1, 2010.  Chief Wallace testified that the

purpose of a pre-disciplinary hearing is for the employee to appeal her supervisor's decision, present her case and for Chief Wallace to weigh the evidence and make the appropriate decision about the employee's discipline. Doc. # 20, Wallace Depo p. 23.

Chief Wallace testified that he made the decision to fire Lynch only after the April 1 hearing because Lynch was unable to provide a satisfactory explanation for why she made the errors. However, contrary to his deposition testimony, Chief Wallace sent an e-mail on March 31 to department members informing them that Lynch would no longer be employed by the City. Chief Wallace gave Lynch an opportunity to resign in lieu of termination, but Lynch declined and was terminated by the City on April 1, 2010.

On May 4, 2010, Lynch filed a one-count complaint against the City alleging a violation under FMLA for interference and retaliation.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the

existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting <u>Celotex</u>, 477 U.S. at 324).

10

If there is a conflict between the parties' allegations
or evidence, the non-moving party's evidence is presumed to be
true and all reasonable inferences must be drawn in the non-
moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344
F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder
evaluating the evidence could draw more than one inference
from the facts, and if that inference introduces a genuine
issue of material fact, the court should not grant summary
judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d
1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel
Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th
Cir. 1988)). However, if the non-movant's response consists
of nothing "more than a repetition of his conclusional
allegations," summary judgment is not only proper, but
required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir.
1981).

**III. <u>Analysis</u>**

The FMLA provides that an eligible employee is authorized
to take up to twelve weeks of unpaid leave per year for a
serious health condition that makes the employee unable to
perform the functions of the position of such employee. 29
U.S.C. § 2612(a)(1)(D). If the employee returns to work at
the end of the leave period, he or she is entitled "to be

restored by the employer to the position of employment held by the employee when the leave commenced" or, if the previous position is no longer available, "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The FMLA provides for two types of claims: interference and retaliation. See Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003)(citing Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001)); see 29 U.S.C. § 2615(a)(1)-(2); see also Wascura v. City of S. Miami, 257 F.3d 1238, 1247-48 (11th Cir. 2001). Lynch asserts both interference and retaliation claims.

### A.  FMLA Retaliation Claim

In a retaliation claim, "an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Strickland, 239 F.3d at 1206 (citing 29 U.S.C. § 2615(a)(1)&(2); 29 C.F.R. § 825.220(c)). A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010). "This can be shown through either direct or indirect

evidence, the latter of which requires applying the burden-shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1372 (N.D. Ga. 2008). Lynch submits that she has proffered both direct and indirect evidence.

Direct evidence "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). To serve as direct evidence of retaliation, an employer's statement must prove discrimination without any inference or presumption. Connor, 546 F. Supp. 2d at 1373. "The Eleventh Circuit has said that this means 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.'" Id. (citing Wilson, 376 F.3d at 1086). "If the statement merely suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Id.

If a plaintiff claiming FMLA retaliation relies upon circumstantial evidence, the burden-shifting framework applies. "Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination."

<u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The burden then shifts to the defendant, who must articulate a legitimate and non-discriminatory reason for its action. <u>Id.</u> at 1528. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff, who must then prove that the defendant's reason is a pretext for discrimination. <u>Id.</u> Lynch alleges that the City retaliated against her by terminating her employment because she took intermittent FMLA leave.

### 1. Direct Evidence

Lynch states in her response to the motion for summary judgment that "[a]s set forth above, Lynch has offered direct evidence of discriminatory intent." Doc. # 28 at 11. Lynch, however, fails to point specifically to what she considers direct evidence of discriminatory intent. Upon review of the evidence set forth in Lynch's response, the Court does not consider any of the evidence as direct evidence of retaliation.

### 2. Circumstantial Evidence/Prima Facie Case

"Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Brammer v. Winter</u>, No. 3:06-cv-16-J-32MCR, 2007 WL 4365643, at *3 (M.D. Fla. Dec. 12,

2007) (quoting <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997)). Nonetheless, the City argues that Lynch has failed to establish a prima facie case of retaliation. The City does not dispute that Lynch engaged in a statutorily protected activity by taking intermittent FMLA leave, nor that Lynch suffered an adverse employment action in the form of termination. The City, however, contends that Lynch cannot establish a prima facie case of retaliation because she has not established a causal connection between the termination and the taking of FMLA leave.

To demonstrate a causal relationship, an employee must show that the protected activity and the adverse employment action were not completely unconnected, that the decision maker was aware of the protected activity at the time he or she decided to take the adverse employment action, and that the protected activity and the adverse employment action were "very close" in proximity. <u>See</u>, <u>e.g.</u>, <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001); <u>Krutziq</u>, 602 F.3d at 1234; <u>Brungart v. Bellsouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000). In fact, the Supreme Court has stated that temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient evidence of a causal connection if the temporal

proximity is "very close." <u>Clark County Sch. Dist.</u>, 532 U.S. at 273.

Lynch began taking significantly more FMLA leave in March 2010, when she was placed on new medications that caused increased side effects. Fire Marshal Mullins was aware of Lynch's use of FMLA leave when he recommended her termination to Chief Wallace, and Lynch's termination occurred within two days after Lynch returned from two days of FMLA leave at the end of March 2010. The Court finds that the temporal proximity between the City's knowledge of the protected activity and Lynch's termination is "very close" and, as such, is sufficient evidence of a causal connection. Accordingly, the Court finds that Lynch has established a prima facie case of retaliation.

When an employee successfully articulates a prima facie case, the burden shifts to the employer to "articulate a legitimate reason for the adverse action." <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1297 (11th Cir. 2006). If the employer does so, the employee must then show that the employer's proffered reasons were pretextual. <u>Id</u>. In the instant matter, the City has adequately asserted a legitimate, nondiscriminatory reason for terminating Lynch. Specifically, the City submits that Lynch was terminated for

falsifying her time entries for March 22 and 23, 2010.

### 3. Evidence of Pretext

Lynch bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the City is a mere pretext for prohibited, retaliatory conduct. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). An employee may show pretext either by directly persuading the court that a discriminatory reason "more likely than not" motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 513 (1993); Diaz v. Transatl. Bank, 367 Fed. Appx. 93, 97 (11th Cir. 2010). To show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1538 (citations omitted). Where a defendant advances different and conflicting reasons for its actions at various stages of the process, the proffered reason may be considered unworthy of belief. See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194-95 (11th Cir. 2004).

However, an employee cannot succeed in demonstrating pretext simply by quarreling with the wisdom of the employer's reason or substituting her own business judgment for that of her employer. Diaz, 367 Fed. Appx. at 97; Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). Rather, the employee "must meet the reason head on and rebut it" with evidence of pretext. Id. An employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000).

Lynch contends that the City's alleged motive, timing and reason for terminating Lynch are weak, implausible and inconsistent. Lynch first points to inconsistencies in Chief Wallace's explanation of how and why he terminated Lynch. Specifically, Lynch cites to Chief Wallace's testimony that he came to his conclusion and decided to terminate Lynch only after speaking with her during the April 1 pre-disciplinary hearing. Chief Wallace testified that the purpose of the pre-disciplinary hearing was for him to make a fair decision after giving Lynch a chance to defend herself. There is evidence, however, that Chief Wallace made his decision to terminate Lynch before the April 1 pre-disciplinary hearing, i.e., Chief

Wallace's March 31 e-mail to the department that Lynch would no longer be employed by the City.

Lynch next submits that the veracity of the City's proffered reason for termination is suspect because Lynch's supervisors ignored their normal policy for reviewing and approving time entries when Lynch submitted her time off for March 22 and 23. Assistant Chief Wedin testified that time entry errors are normally returned to the employee for correction. This is in addition to the fact that Lynch had requested help from her supervisors in correcting the time entries from "sick time" to "FMLA-sick."

These inconsistencies are buttressed by the fact that Chief Wallace questioned Lynch on March 25, 2010, and March 31, 2010, regarding the reasons for and the amount of her absences. Lynch alleges that prior to March 2010 she was never questioned about why she needed leave.

Lynch has pointed to several instances of inconsistent or implausible claims with regard to the reason propounded by the City to justify Lynch's termination. Such inconsistencies and implausibilities would allow a fact finder to conclude that the City's justifications are false or unworthy of credence. See Combs, 106 F.3d at 1538; Staten v. New Palace Casino, LLC, 187 Fed. Appx. 350, 359 (5th Cir. 2006)("When an employer

offers inconsistent explanations for its employment decision at different times, as here, the jury may infer that the employer's proffered reasons are pretextual."). Based on the evidence submitted to the Court, there exist genuine issues of material fact as to whether the City's termination of Lynch was more likely motivated by an impermissible discriminatory animus, and whether the March 22 and 23, 2010, time entries were pretext for intentionally violating Lynch's FMLA rights.

### B.   FMLA Interference Claim

"To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206-07. "Alternatively, an employee may demonstrate that the employer interfered with the FMLA benefit." Lowery v. Strength, 356 Fed. Appx. 332, 334 (11th Cir. 2009). Interference with the exercise of an employee's rights under the FMLA would include, for example, refusing to authorize FMLA leave or discouraging an employee from using FMLA leave.   29 C.F.R. § 825.220(b).   While a retaliation claim requires the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," the employer's intent is immaterial in an interference claim. Strickland, 239 F.3d at 1207.

The City argues that Lynch has not presented any evidence that the City denied her any right to which she was entitled under the FMLA.  Lynch alleges that she was twice interrogated about her leave immediately after returning from leave, which Lynch alleges was designed to discourage her from taking more leave.  Lynch also alleges that the City interfered with her rights under the FMLA by terminating her employment, thereby barring her from returning to the same or a comparable position after she returned from FMLA leave.

This Court finds that Lynch's interference claim survives the City's motion for summary judgment.  There is a genuine issue of material fact as to whether Chief Wallace's "interrogations" were designed to discourage Lynch from taking more FMLA leave.  In addition, there is a genuine issue of material fact as to whether Lynch was reinstated into her position when she was arguably terminated the same day that she returned from FMLA leave as evidenced by Chief Wallace's March 31 e-mail informing the department that he had fired Lynch and that April 1 would be her last day.

### C.  Liquidated Damages

The City asserts that Lynch's claim for liquidated damages must be dismissed.  An employee who prevails under the FMLA may recover damages for "wages, salary, employment

benefits, or other compensation denied" with interest and a doubling of these sums as liquidated damages. 29 U.S.C. § 2617(a)(1)(A). A court has the discretion to deny an award of liquidated damages where the employer proves that a violation of the FMLA "was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." Id. Thus, an employer must have acted with subjective good faith and its conduct must be objectively reasonable. See Cooper v. Fulton County, Ga., 458 F.3d 1282, 1288 (11th Cir. 2006).

Because a jury could decide that the City intentionally retaliated or interfered with Lynch's FMLA rights, the Court finds that it is not appropriate to dismiss Lynch's claim for liquidated damages at this stage in the proceedings. Accordingly, the City's request to dismiss Lynch's claim for liquidated damages is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant City of Largo's Motion for Summary Judgment (Doc. # 17) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of October, 2011.

22

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record